1  **GARCIA & ARTIGLIERE**
   **Stephen M. Garcia, State Bar No. 123338**
2  **edocs@lawgarcia.com**
   **David M. Medby, State Bar No. 227401**
3  **dmedby@lawgarcia.com**
   **One World Trade Center, Suite 1950**
4  **Long Beach, California 90831**
   **Telephone: (562) 216-5270**
5  **Facsimile: (562) 216-5271**

6  Attorneys for Plaintiffs and the Putative
   Class
7

8

9              **UNITED STATES DISTRICT COURT**

10    **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

11

12  TRACYNE  RESTREPO,  by  and       CASE NO.
    through  her  Successor  in  Interest,
13  Catalina Szetela                  <u>**CLASS ACTION**</u>

14                                    **COMPLAINT FOR DAMAGES AND**
                                      **INJUNCTIVE RELIEF**
15            Plaintiffs,
                                      1)    Violations of the Consumer Legal
16      vs.                                 Remedies Act (*Civil Code* § 1750,
                                            et seq.)
17  SUN   MAR   MANAGEMENT            2)    Violations of Resident Rights
    SERVICES;  COMMUNITY  CARE              (*Health & Safety. Code* § 1430,
18  REHAB  CENTER,  LLC;  IRVING            subd. (b))
    BAUMAN; and DOES 1-250, inclusive,
19

20

21            Defendants.

22       COMES NOW TRACYNE RESTREPO by and through her Successor in

23  Interest, Catalina Szetela on behalf of herself and a class of similarly situated

24  California consumers and allege upon information and belief and the investigation of

25  counsel, except for information based on personal knowledge as follows:

26                      <u>**THE PARTIES**</u>

27  1.     <u>Plaintiff Class</u>.

28         The class sought to be represented is defined as follows:

_____
                        1
        COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
M:\Community Care Rehab, In Re (23-049)\Pleadings\Complaint.docx

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

GARCIA & ARTIGLIERE

ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

a.    <u>Plaintiff Subclass One: "Private Pay Residents-First Cause of Action Only."</u>

The first subclass sought to be represented in this action as it relates to the First Cause of Action only, is defined as follows: all persons who resided in (or continue to reside in) the California skilled nursing facility doing business as Community Care and Rehabilitation Center that is and was owned, operated, and/or managed by the defendants named herein at any time within the three years prior to the filing of this Complaint through the date of the final disposition of this action wherein the defendants were reimbursed for services provided to a "class member" by private pay and/or privately acquired insurance and/or any HMO or PPO. The subclass does not include: (a) any officers, directors or employees of the Defendants; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); (c) any juror selected to hear this case.

b.    <u>Plaintiff Subclass Two: "All Residents-First And Second Causes of Action</u>

The second subclass sought to be represented in this action as it relates to the First and Second Causes of Action, is defined as follows: all persons who were resided in (or continue to reside in) the California skilled nursing facility doing business as Community Care and Rehabilitation Center that is and was owned, operated, and/or managed by the defendants named herein at any time within the three years prior to the filing of this Complaint through the date of the final disposition of this action. The class does not include: (a) any officers, directors or employees of the Defendants; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); (c) any juror selected to hear this case. This subclass shall seek attorneys' fees and costs only.

c.    <u>Plaintiff Subclass Three: "Health & Safety Code Section 1430(b) Violations"</u>

The third subclass sought to be represented in this action as it relates to the

2

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

Second Cause of Action only, is defined as follows: all persons who were resided in (or continue to reside in) the California skilled nursing facility doing business as Community Care and Rehabilitation Center that is and was owned, operated, and/or managed by the defendants named herein at any time within the three years prior to the filing of this Complaint through the date of the final disposition of this action regardless of the manner in which Defendants were reimbursed for services. The class does not include: (a) any officers, directors or employees of the Defendants; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); (c) any juror selected to hear this case.

2.    <u>Individual Plaintiff/Class Representative</u>. Plaintiff TRACYNE RESTREPO (hereinafter sometimes referred to as "PLAINTIFF") was at all times relevant hereto a resident and citizen of the State of California. TRACYNE RESTREPO was a resident in the skilled nursing facility doing business as Community Care and Rehabilitation Center owned, operated and/or controlled by the defendants (the FACILITY) who entered into a standard admission agreement with the Defendants. Each Plaintiff and putative class member was at all times relevant hereto a "person," and a "consumer" as defined by *Civil Code* §1761 in that each Plaintiff and putative class member is an individual who sought or acquired, by purchase or lease, services for personal purposes.

3.    <u>Defendants</u>. COMMUNITY CARE REHAB CENTER, LLC, which lists its principal place of business with the California Secretary of State as 3050 Saturn Street #201, Brea, California 92821, and DOES 1 through 50 (hereinafter referred to as the "FACILITY") were at all relevant times in the business of providing long-term custodial care as the licensee of a 162-bed, 24-hour skilled nursing facility under the fictitious name Community Care and Rehabilitation Center, and were subject to the requirements of federal and state law regarding the operation of skilled nursing facilities operating in the State of California.

4.    During at least a portion of times relevant hereto, Defendant IRVING

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
M:\Community Care Rehab, In Re (23-049)\Pleadings\Complaint.docx

BAUMAN and DOES 51 through 100 each owned at least a 5% or more equity interest in COMMUNITY CARE REHAB CENTER, LLC as reported to the California Department of Health Care Access and Information (HCAI) under penalty of perjury, with all the legal rights and obligations attendant thereto.

5.    During at least a portion of times relevant hereto, IRVING BAUMAN owned a 5% or more equity interest in SUN MAR MANAGEMENT SERVICES as reported to the California Department of Health Care Access and Information (HCAI) under penalty of perjury.

6.    SUN MAR MANAGEMENT SERVICES effectively operates and controls COMMUNITY CARE REHAB CENTER, LLC's operations as its management company. In addition, SUN MAR MANAGEMENT SERVICES is one of the owners of COMMUNITY CARE REHAB CENTER, LLC, LLC as reported to the Centers for Medicare & Medicaid Services.

7.    Defendants IRVING BAUMAN; SUN MAR MANAGEMENT SERVICES and DOES 51 through 151 (collectively hereinafter, the "MANAGEMENT DEFENDANTS") were at all relevant times the FACILITY'S owners, operators, parent company, and/or management company and actively participated and controlled the business of the FACILITY and thus provided long-term professional and custodial care as a 24-hour Skilled Nursing Facility (hereinafter the FACILITY and MANAGEMENT DEFENDANTS are collectively alternatively referred to as the "DEFENDANTS").

8.    TRACYNE RESTREPO is informed and believes and therefore alleges that at all times relevant to this Complaint, DOES 101-250 were licensed and unlicensed individuals and/or entities, and employees of the DEFENDANTS rendering care and services to TRACYNE RESTREPO and whose conduct caused or contributed injuries and damages alleged herein. It is alleged that at all times relevant hereto, the DEFENDANTS were aware of the unfitness of DOES 101-250 to perform their necessary job duties and yet employed these persons and/or entities in disregard

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1   of the health and safety of TRACYNE RESTREPO.

2       9.      TRACYNE RESTREPO is ignorant of the true names and capacities of

3   those Defendants sued herein as DOES 1 through 250, and for that reason has sued

4   such Defendants by fictitious names. PLAINTIFF will seek leave of the Court to

5   amend this Complaint to identify said Defendants when their identities are

6   ascertained.

7                        **CLASS ACTION ALLEGATIONS**

8       10.     <u>Ascertainable Class</u>.    The proposed class is ascertainable. The

9   litigation of the questions of fact and law involved in this action will resolve the rights

10  of all members of the class and hence will have binding effect on all class members.

11  These class members can be readily identified from residency computer files of the

12  defendants and other means readily available to the defendants, and thus the plaintiffs,

13  through minimally intrusive discovery. The class is numerous. On information and

14  belief, those class members number more than three thousand (3000). Joinder of all

15  class members is impracticable due to both a reluctance of class members to sue their

16  current caregivers and the relatively small monetary recovery for each class member

17  in comparison to the costs associated with separate litigation.

18      11.     <u>Community of Interest</u>. The proposed class has a well-defined

19  community of interest in the questions of fact and law to be litigated. The common

20  questions of law and fact are predominant with respect to the liability issues, relief

21  issues and anticipated affirmative defenses. The named Plaintiffs have claims typical

22  of the class members. Without limitation, as a result of defendants' conduct alleged

23  herein, each Plaintiff and the class were deprived of the rights afforded to all residents

24  of skilled nursing facilities under *Health & Safety Code* §1599.1(a) and 22 C.C.R.

25  §72527(a)(25), most specifically the right to live in a facility that employs "an

26  adequate number of qualified personnel to carry out all of the functions of the

27  facility." The named Plaintiffs can fairly and adequately represent and protect the

28  interests of the class in that there are no conflicts between each Plaintiff's interest and

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
M:\Community Care Rehab, In Re (23-049)\Pleadings\Complaint.docx

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

the interests of other class members, this action is not collusive, each named Plaintiff and Plaintiff's counsel have the necessary resources to litigate this action, and counsel has the experience and ability required to prosecute this case as a class action.

12.    <u>Superiority of Class Adjudication</u>. The certification of a class in this action is superior to the litigation of a multitude of cases by members of the putative class. Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings. Moreover, there are class members who are unlikely to join or bring an action due to, among other reasons, their reluctance to sue their current nursing home provider and/or their inability to afford a separate action. Finally, equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and hence subject to an order spreading the costs of the litigation among the class members in relationship to the benefits received.

## **ALTER EGO ALLEGATIONS**

13.    The MANAGEMENT DEFENDANTS and the FACILITY are "alter egos" of one other and form a "Single Enterprise" as more fully alleged below and according to proof at trial.

14.    The "Single Enterprise" and alter ego relationship of the defendants is illustrated by the most recent filing of COMMUNITY CARE REHAB CENTER, LLC under penalty of perjury with the State of California's Department of Health Care Access and Information (HCAI) under penalty of perjury dated December 31, 2021.

15.    In the HCAI report COMMUNITY CARE REHAB CENTER, LLC reports paying to SUN MAR MANAGEMENT SERVICES, $903,200.00 for "Management Services" which are illusory, not performed and charged at a rate well above true value. The agreement to pay for such services was not the result of an arm's length negotiation but was rather dictated to COMMUNITY CARE REHAB CENTER, LLC by Frank Johnson and IRVING BAUMAN as managers of COMMUNITY CARE REHAB CENTER, LLC and the listed directors/officers of

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
M:\Community Care Rehab, In Re (23-049)\Pleadings\Complaint.docx

SUN MAR MANAGEMENT SERVICES and in furtherance of the take from one pocket place it another mentality of a single enterprise.

16.    MANAGEMENT DEFENDANTS provide no services which near such value and rather this is a manner in which the "Single Enterprise" siphons off monies for the sole purpose of unjustly enriching the owners of MANAGEMENT DEFENDANTS and others who mandate the payment from the FACILITY to the MANAGEMENT DEFENDANTS for these non–existent phantom services.

17.    Accordingly, these entities controlled by Frank Johnson and IRVING BAUMAN and others as managers of COMMUNITY CARE REHAB CENTER, LLC and in furtherance of the take from one pocket to place it in another mentality of a single enterprise, money required by COMMUNITY CARE REHAB CENTER, LLC to provide proper and required care to residents of the FACILITY, including TRACYNE RESTREPO.

18.    Accordingly, the FACILITY, which is commonly owned and/or controlled by the MANAGEMENT DEFENDANTS, or their related entities, engaged in financial dealings with other related entities in order to siphon FACILITY revenues to the MANAGEMENT DEFENDANTS  and their other commonly owned, operated, and controlled entities for their personal and unlawful profit as the expense of minimum required patient care to elderly and dependent adults admitted to their chain of nursing homes including TRACYNE RESTREPO.

19.    In doing the wrongful actions and omissions alleged herein, the FACILITY and the MANAGEMENT DEFENDANTS, including COMMUNITY CARE REHAB CENTER, LLC:

(1)   commingled funds and other assets;

(2)   failed to segregate funds of the separate entities, and the unauthorized     diversion of corporate funds or assets for purposes other than corporate     uses;

(3)   the MANAGEMENT DEFENDANTS treated the assets of the FACILITY         as their own;

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

7

(4) the MANAGEMENT DEFENDANTS failed to maintain minutes or adequate corporate records of the FACILITY;

(5) the MANAGEMENT DEFENDANTS failed to adequately capitalize the FACILITY;

(6) the MANAGEMENT DEFENDANTS used the FACILITY as a mere shell, instrumentality or conduit for a single venture or the business of themselves;

(7) the MANAGEMENT DEFENDANTS disregarded legal formalities as to the FACILITY and failed to maintain arm's length relationships among related entities as evidenced by the "related party transactions" involving the FACILITY and one or more persons commonly owned, operated, and/or controlled by the MANAGEMENT DEFENDANTS, including COMMUNITY CARE REHAB CENTER, LLC; and

(8) the MANAGEMENT DEFENDANTS and the FACILITY diverted assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another.

And accordingly, the FACILITY and the MANAGEMENT DEFENDANTS, including COMMUNITY CARE REHAB CENTER, LLC were alter egos of one another.

20.    In doing the wrongful actions and omissions alleged herein, the FACILITY and the MANAGEMENT DEFENDANTS, including COMMUNITY CARE REHAB CENTER, LLC:

(1)  participated in a common venture or in a similar or functionally reciprocal business;

(2)  had identical equitable ownership;

(3)  had common directors, officers and employees;

(4)  pooled assets and revenues, or use of one corporation's financial resources to pay or guaranty the other's obligations (especially if the other corporation is undercapitalized); and

(5)  the corporations tend to benefit jointly from transactions entered into by one of them.

And accordingly, the FACILITY and the MANAGEMENT DEFENDANTS, including COMMUNITY CARE REHAB CENTER, LLC, operated as a single enterprise.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
M:\Community Care Rehab, In Re (23-049)\Pleadings\Complaint.docx

21.     Through a plot devised and executed by the DEFENDANTS through its Governing Body, the DEFENDANTS retain as many residents as possible for the purpose of generating revenue from the provision of "skilled' nursing care and other services which are offered but are, in reality, non-existent or subpar at best. This scheme has resulted in a lucrative business model for DEFENDANTS. In the 2021 fiscal year alone the DEFENDANTS collected a total of $21,598,103.00 for the provision of "skilled nursing care" services. Significantly, $1,414,560.00 of this sum was funded by Medicare and $16,208,028.00 by Medi-Cal. All this revenue flows directly into the pockets of the DEFENDANTS at the specific direction of its Governing Body while the residents such as TRACYNE RESTREPO receive little to no treatment in exchange for such compensation.

22.     Integrated into the scheme set forth by the DEFENDANTS through their Governing Body is the objective to limit costs so as to maximize profit at the expense of the health and safety of residents like TRACYNE RESTREPO. Through such budgetary constraints, the DEFENDANTS systematically fail to have the resources or the staff on hand to manage the care of residents like TRACYNE RESTREPO. As a result, the FACILITY is repeatedly issued deficiencies by the Department of Public Health for failure to provide the patient care they have promised and are required to perform as a licensed healthcare facility. These deficiencies and others are a prima facie illustration of the DEFENDANTS' intent to willfully and systematically withhold the care and treatment which is necessary to preserve the health and safety of their residents. In fact the FACILITY'S Governing Body and managing agents have been explicitly aware of the ongoing dysfunction at the FACILITY and repeatedly signed plans of correction each time a DPH investigation resulted in a citation. By signing the plan of correction the DEFENDANTS promise to remedy each and every deficiency found at the FACILITY as a result of the DPH investigation. Despite these promises to remedy these serious issues addressed above and confronted by the Governing Body and all managing agents of the FACILITY,

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

M:\Community Care Rehab, In Re (23-049)\Pleadings\Complaint.docx

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

GARCIA & ARTIGLIERE

ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1   the DEFENDANTS simply moved forward with their scheme to warehouse as many
2   residents as possible for the sake of maximizing profit and with zero regard for the
3   health and safety of these residents. Thus the status quo was maintained in
4   DEFENDANTS' continued and deliberate effort to minimize cost. TRACYNE
5   RESTREPO was no exception to this policy to systematically withhold care from
6   residents in favor of profit maximization as more fully alleged hereafter.

7       23.    The FACILITY and the MANAGEMENT DEFENDANTS operated in
8   such a way as to make their individual identities indistinguishable, and are therefore,
9   the mere alter-egos of one another. There was a unity of interest between the
10  FACILITY and the MANAGEMENT DEFENDANTS such that a failure to recognize
11  the alter ego relationship between them would lead to an inequitable result.

12      24.    At all relevant times, the FACILITY and the MANAGEMENT
13  DEFENDANTS and each of their tortious acts and omissions, as alleged herein, were
14  done in concert with one another in furtherance of their common design and
15  agreement to accomplish a particular result, namely maximizing profits from the
16  operation of the FACILITY by underfunding and understaffing the FACILITY.
17  Moreover, the DEFENDANTS aided and abetted each other in accomplishing the acts
18  and omissions alleged herein. (See Restatement (Second) of Torts §876 (1979)).

19      25.    The MANAGEMENT DEFENDANTS controlled the FACILITY to
20  such a degree that it was a "mere instrumentality" of the MANAGEMENT
21  DEFENDANTS used for an improper purpose.

22      26.    This includes but is not limited to the legal obligation in the operation of
23  the FACILITY that "any matter relating to the activities of the limited liability
24  company is decided *exclusively* by the managers" pursuant to *Corporations Code* §
25  17704.07(c)(1) (emphasis added).) And in fact, in effect, only the manager of the
26  FACILITY, has the sole capacity to bind the limited liability company and/or execute
27  any instrument on behalf of the limited liability company.

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
M:\Community Care Rehab, In Re (23-049)\Pleadings\Complaint.docx

27.    And accordingly any act of the MANAGEMENT DEFENDANTS is imputed to the FACILITY, pursuant to *Corporations Code* § 300(a), 17703.01(b), (c).

28.    Evidence for this reality exists in the exchange of directional documents and reports shared amongst the DEFENDANTS as to issues including staffing, census, interaction of the FACILITY with the State of California's Department of Public Health, and regulatory compliance which were utilized by the MANAGEMENT DEFENDANTS to make operational decisions as the true owners, operators and managers of the FACILITY.

29.    And for this effort, the MANAGEMENT DEFENDANTS siphon scarce funds and assets away from residents of the FACILITY through "Administration" accounts under the guise of artificially inflated payments for supplies, rent, and other non-clinical, illusory management/administrative services as reported by the DEFENDANTS under penalty of perjury to the State of California's Department of Health Care Access and Information (HCAI). For example, as reported in the Medicare/MediCal cost report submitted, under penalty of perjury, to HCAI for a reporting period ending 2021, the FACILITY paid $903,200.00 for non-clinical "Management Fees" which were nowhere near the artificially inflated payments totaling $903,200.00.

30.    Because the funds that were improperly siphoned to the MANAGEMENT DEFENDANTS including but not limited to SUN MAR MANAGEMENT SERVICES and IRVING BAUMAN for phantom services as alleged in the immediately preceding paragraph should have instead gone to pay for labor costs to ensure that the FACILITY was sufficiently staffed to meet the needs of the residents, failing to hold DEFENDANTS liable under an alter ego theory would lead to an inequitable result.

31.    In addition to the aforementioned allegations, it is alleged upon information and belief that the managerial and operational control exerted by the MANAGEMENT DEFENDANTS over the FACILITY is also achieved through the

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

implementation of uniform policies and procedures that the MANAGEMENT DEFENDANTS disseminate to the FACILITY and with which the FACILITY and its employees and agents are mandated to comply.

## **FACTUAL ALLEGATIONS**

32.    In owning, operating, managing, administrating, controlling, and/or supervising the FACILITY, DEFENDANTS were required to comply with California statutory and regulatory law governing the operation of skilled nursing facilities. In owning, operating, managing, administrating, controlling, and/or supervising the FACILITY, DEFENDANTS were also subject to the authority of licensing and other governmental agencies, including but not limited to the California Department of Public Health ("DPH"), the California Department of Health Care Services ("DHCS"), and the federal Centers for Medicare & Medicaid Services ("CMS").

33.    It is alleged that Plaintiff and each class member were admitted to the FACILITY pursuant to the utilization of the "California Standard Admission Agreement"[1] as mandated by Title 22 of the California *Code of Regulations*, §72516. *Health & Safety Code* §1599.74 mandates that every California skilled nursing facility admission agreement shall contain a complete copy of the statutory and regulatory bill of rights in legible print of no less than 12-point type and that every resident shall sign a separate written acknowledgement that the resident has been informed of the Resident Bill of Rights.[2] California *Health & Safety Code* §1599.74 mandates in relevant part:

> (b)    Every contract of admission shall contain a complete copy of both the statutory and regulatory Patients' Bill of Rights. Notwithstanding any other provision of law, the text of the Patients' Bill of Rights shall be in legible print of no less than 12-point type. If a translation has been provided by the department, the text given to non-English-speaking residents shall be in their language.

[1] A true and correct copy of an exemplar of the "California Standard Admission Agreement for Skilled Nursing Facilities and Intermediate Care Facilities" obtained from the California Department of Public Health's website at the self-authenticating link http://www.cdph.ca.gov/pubsforms/forms/CtrldForms/cdph327.pdf.
[2] A true and correct copy of an exemplar of the Resident Bill of Rights (Attachment F to the Standard Admission Agreement) obtained from the California Department of Public Health website at the self-authenticating link http://www.cdph.ca.gov/pubsforms/forms/CtrldForms/cdph327-Attachment-F.pdf  at 32–37.

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

GARCIA & ARTIGLIERE

ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1

(c)    The    contract    shall    also    contain    a    separate    written
acknowledgement that the resident has been informed of the Patients'
Bill of Rights. Written acknowledgement by the resident or the
resident's representative must be made either on a separate document
or in the agreement itself next to the clause informing the resident of
these regulatory rights. Written acknowledgement by use of the
signature on the agreement as a whole does not meet this requirement.

California *Health & Safety Code* §1599.74(b)–(c).

34.    Pursuant to this uniform representation that the services provided by the
Defendants would meet the particularized standards as set forth in the Resident Bill
of Rights attached to the uniform Admission Agreement, the DEFENDANTS were to
provide all residents of the FACILITY services consistent with the mandatory
requirements of California *Health & Safety Code* §1599.1(a) as set forth in Title 22
*Code of Regulations* §72527(a)(25). Specifically, the services represented by the
DEFENDANTS that they would provide to each resident, via the contractual
Admission Agreement arrangement with each resident, was explicitly stated by the
DEFENDANTS to include the obligation, and representation as to the standard of
care to be provided, that the FACILITY would ensure the rights afforded to all
residents of skilled nursing facilities under *Health & Safety Code* §1599.1(a) and 22
*Code of Regulations* §72527(a)(25), most specifically the right to live in a facility
that employs "an adequate number of qualified personnel to carry out all of the
functions of the facility" including, and as to that which this lawsuit references,
"Direct Caregivers" as the term "Direct Caregivers" is defined 22 *Code of Regulations*
§72038.[3] These uniform representations of the DEFENDANTS in the Admission
Agreement as to the nature of their services in this regard as to "Direct Caregivers"

---

[3] Throughout this Complaint when the term "Direct Caregiver" is referenced it is meant to be as that term is defined in
22 *Code of Regulations* §72038 which is as follows:

"Direct caregiver" means a registered nurse, as referred to in Section 2732 of the Business and
Professions Code, a licensed vocational nurse, as referred to in Section 2864 of the Business and
Professions Code, a psychiatric technician, as referred to in Section 4516 of the Business and
Professions Code, and a certified nurse assistant, or a nursing assistant participating in an approved
training program, as defined in Section 1337 of the Health and Safety Code, while performing nursing
services as described in sections 72309, 72311 and 72315. A person serving as the director of nursing
services in a facility with 60 or more licensed beds cannot be a direct caregiver.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

M:\Community Care Rehab, In Re (23-049)\Pleadings\Complaint.docx

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

as defined in 22 *Code of Regulations* §72038, while performing nursing services as described in Sections 72309, 72311, and 72315 of Title 22 of the California *Code of Regulations*, were false and actually known to be false when made by the DEFENDANTS when made. And in fact, the allegations in this action are specifically limited to an analysis of the failure to comply with applicable regulations and laws as to "Direct Caregivers" as defined in 22 *Code of Regulations* §72038, only.

35.    Pursuant to requirements of law and the provisions of the standard admission agreement, the DEFENDANTS were to provide PLAINTIFF and the class with services consistent with the mandatory requirements of Title 22 *Code of Regulations* §72527 and California *Health & Safety Code* §1599.1(a), as specifically referenced in Title 22 CODE OF REGULATIONS  §72527(a)(25). Specifically, the DEFENDANTS were required to ensure the rights afforded to PLAINTIFF, members of the class, and all residents of skilled nursing facilities under *Health & Safety Code* §1599.1(a) and *Code of Regulations*  §72527(a)(25), most specifically, the right to live in a facility that employs "an adequate number of qualified personnel to carry out all of the functions of the facility," in this lawsuit meaning "Direct Caregivers," as the term "Direct Caregivers" is defined 22 *Code of Regulations* §72038, pursuant to Health & Safety Code §1599.1(a) (as expressly incorporated by Title 22 *Code of Regulations* §72527(a)(25). As to "Direct Caregivers" these DEFENDANTS failed miserably in this regard. The analysis of *Health & Safety Code* §1599.1 is accomplished in part by assessing the compliance of the DEFENDANTS with, as to this lawsuit "Direct Caregivers", as the term "Direct Caregivers" is defined 22 *Code of Regulations* §72038, consistent with the requirements of 22 *Code of Regulations* §72329.1.

36.    During the admissions process and prior to becoming and/or remaining residents of the FACILITY, representatives of the FACILITY presented Plaintiff and each class member, and/or each's legal representative, with a standard admission agreement containing the resident bill of rights as an attachment to the admission

agreement as mandated by *Health & Safety Code* §1599.74. Plaintiff and each member of the class, and/or each's legal representative, read and understood the standard admission agreement and relied upon the material terms contained therein. In reliance on the terms of the standard admission agreement, Plaintiff and each member of the class, and/or each's legal representative, decided that Plaintiff and each member of the class would become and/or remain residents of the FACILITY, and signed the admission agreement and became and/or remained residents of the FACILITY. Each and every putative class member, and most specifically the named Plaintiff, and/or their legal representatives acting on their behalf, justifiably relied on these false written representations in agreeing to the terms and obligations of the written admission agreement to their detriment and as more fully set forth below.

37.    Before, during, and after the admissions processes of Plaintiff and each class member, the DEFENDANTS actively and intentionally concealed from Plaintiff and class members, and/or their legal representatives, that at all times relevant hereto the FACILITY did not employ "an adequate number of "Direct Caregivers", as the term "Direct Caregivers" is defined 22 *Code of Regulations* §72038, to carry out all of the functions of the facility" in violation of Health & Safety Code §1599.1(a) (as expressly incorporated by Title 22 *Code of Regulations* §72527(a)(25)).

38.    Part and parcel of this concealment were the knowing misrepresentations of the DEFENDANTS to state and federal governmental entities as to the actual amount of Direct Caregivers on duty in the FACILITY which were then posted on publically available web sites. That is, even the information as to the DEFENDANTS staffing of Direct Caregivers was knowingly false as the governmental entities relied on knowingly inaccurate information provided by the DEFENDANTS in the form of inaccurate staffing data.

39.    In fact, and therefore, publically available information as to the direct caregiver levels was false based on knowing misinformation made available to governmental entities by the DEFENDANTS.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

M:\Community Care Rehab, In Re (23-049)\Pleadings\Complaint.docx

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

40.     The true facts of the understaffing of Direct Caregivers in the FACILITY was solely known to the DEFENDANTS who actively concealed this true information from the Plaintiff, and others similarly situated, as well as governmental entities.

41.     It is alleged that the concealments by DEFENDANTS alleged in the immediately preceding paragraphs were intended to deceive Plaintiff and members of the class into believing that the FACILITY was properly operated to induce Plaintiff and class members into becoming and/or remaining residents of the FACILITY. Plaintiff and members of the class, all in infirm health, elderly, and/or in need of skilled nursing care and members of one of the most vulnerable segments of our society, were unsophisticated and unknowledgeable in the operation of skilled nursing facilities in the State of California and had no knowledge of the facts concealed by DEFENDANTS and could not have discovered those concealed facts due to, among other things, their extremely vulnerable status. Had the concealed facts been disclosed to Plaintiff and members of the class, they would not have become and/or remained residents of the FACILITY and would not have paid, or had monies paid on their behalf, for the substandard skilled nursing care at the FACILITY.

42.     Before, during, and after the admissions processes of Plaintiff and each class member, the DEFENDANTS actively and intentionally concealed from Plaintiff and class members and/or each's legal representatives that DEFENDANTS did not devote sufficient financial resources to the proper operation of the FACILITY so as to ensure the sufficiency of "Direct Caregivers, and instead diverted those resources to create ill-begotten profits for DEFENDANTS. It is alleged that this concealment by DEFENDANTS was intended to deceive Plaintiff and members of the class and/or each's legal representatives into believing that the FACILITY was properly operated with sufficient "Direct Caregivers" to induce Plaintiff and class members into becoming and/or remaining residents of the FACILITY. Plaintiff and members of the class, all in infirm health, elderly, and/or in need of skilled nursing care and members of one of the most vulnerable segments of our society, and/or each's legal

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

representatives, were unknowledgeable and unsophisticated in the operation of skilled nursing facilities in the State of California and had no knowledge of the facts concealed by DEFENDANTS and could not have discovered those concealed facts due to, among other things, their extremely vulnerable status.

43.    Before, during, and after the admissions processes of Plaintiff and each class member, the DEFENDANTS actively and intentionally concealed from Plaintiff and class members that DEFENDANTS chronically understaffed the FACILITY with an inadequate number of  "Direct Caregivers" to carry out the function of the FACILITY as more fully alleged herein, and in so doing and as a result thereof, the DEFENDANTS have violated the rights afforded to all residents of skilled nursing facilities under *Health & Safety Code* §1599.1(a) and 22 *Code of Regulations* §72527(a)(25), most specifically the right to live in a facility that employs "an adequate number of 'Direct Caregivers' to carry out all of the functions of the facility." It is alleged that this concealment by DEFENDANTS was intended to deceive Plaintiffs and members of the class into believing that the FACILITY was properly staffed to induce Plaintiff and class members into becoming and/or remaining residents of the FACILITY. Plaintiff and members of the class, all in infirm health, elderly, and/or in need of skilled nursing care and members of one of the most vulnerable segments of our society, were unknowledgeable and unsophisticated in the operation of skilled nursing facilities in the State of California and had no knowledge of the facts concealed by DEFENDANTS and could not have discovered those concealed facts due to, among other things, their extremely vulnerable status. Had the concealed facts been disclosed to Plaintiff and members of the class, they would not have become and/or remained residents of the FACILITY and would not have paid, or had monies paid on their behalf, for the substandard skilled nursing care at the FACILITY.

44.    In reality, in direct contradiction to the representation in their uniform admission agreement that the FACILITY would "employ an adequate number of

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

qualified personnel to carry out all functions of the facility" and to meet the needs of their residents, DEFENDANTS chronically understaffed the FACILITY as to "Direct Caregivers" and chronically failed to meet the particularized standards as set forth in the Resident Bill of Rights relating to the mandatory requirements of California *Health & Safety Code* §1599.1(a) as set forth in Title 22 *Code of Regulations* §72527(a)(25), in the requirements of Title 22 *Code of Regulations* §72329.1 as is more fully alleged herein below. Thus, DEFENDANTS have misrepresented in their admission agreement that entering into the admission agreement with DEFENDANTS conferred or involved rights, remedies, or obligations which the transaction did not have or involve, or which was prohibited by law, in violation of *Civil Code* §1770(a)(14).

45.   Plaintiff and the class members, as persons unknowledgeable and unsophisticated in the operation of skilled nursing facilities in the State of California and having no knowledge of the material concealments by DEFENDANTS alleged herein, justifiably relied on the material terms of, and the representations set forth in, the DEFENDANTS' uniform Admission Agreement in entering into the admission agreement and becoming and/or remaining residents of the FACILITY thereby assuming the obligation of payment to the DEFENDANTS. Most specifically, Plaintiff and the Class relied on the following material term of the California Standard Admission Agreement relating to resident rights:

> **IV. Your Rights as a Resident**.  Residents of this Facility keep all their basic rights and liberties as a citizen or resident of the United States when, after, they are admitted. Because these rights are so important, both federal and state laws and regulations describe them in detail, and state law requires that a comprehensive Resident Bill of Rights be attached to this Agreement.
>
> Attachment F, entitled "Resident Bill of Rights," lists your rights as set forth in State and Federal law. For your information, the attachment also provides the location of your rights in statute.
>
> You should review the attached "Resident Bill of Rights" very carefully. To acknowledge that you have been informed of the "resident Bill of Rights," please sign here: _____ .

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
M:\Community Care Rehab, In Re (23-049)\Pleadings\Complaint.docx

In requiring their residents to specifically and separately acknowledge receipt of DEFENDANTS' representations regarding the minimum standards of care as set forth in the Resident Bill of Rights, DEFENDANTS knew, or should have known, that their residents were reasonably and justifiably relying on said representations.

46.    It is alleged that Plaintiffs and members of the Class suffered injury in fact and concrete harm in that they relied on the representations of the DEFENDANTS that they would be provided with minimum standards of care consistent with the requirements of *Health & Safety Code* §1599.1(a) as incorporated into Title 22 *Code of Regulations* §72527(a)(25), yet did not receive this promised standard of care and suffered pecuniary harm by being deprived of the value of payments made for skilled nursing services when these services were not actually rendered consistent with the DEFENDANTS' representations.

47.    It is alleged that Plaintiffs and members of the Class suffered injury in fact and concrete harm in that their right to live in a facility that employs "an adequate number of 'Direct Caregivers' to carry out all of the functions of the facility" was violated in violation of 22 *Code of Regulations* §72527(a)(25) and Health & Safety Code §1430(b).

48.    In addition, these class members made monetary payments to the DEFENDANTS in return for skilled nursing services of the standard promised by the DEFENDANTS in the uniform Admission Agreement and its attachments which are incorporated into the Admission Agreement as alleged above. The class has suffered pecuniary harm in that the DEFENDANTS did not provide such services of the standard represented. In addition, Plaintiff and class members have suffered pecuniary harm in that DEFENDANTS misrepresented that entering into an admission agreement with DEFENDANTS conferred the statutory resident right under *Health & Safety Code* §1599.1 of Plaintiffs and class members to reside in a facility that employs "an adequate number of qualified personnel to carry out all of the functions of the facility" when in fact the transaction of entering into an admission agreement

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
M:\Community Care Rehab, In Re (23-049)\Pleadings\Complaint.docx

1  with DEFENDANTS did not confer such right.

2      49.    That is, simply by entering into an admission agreement with a resident,

3  the DEFENDANTS represent in writing as an exhibit or addendum attached to the

4  admission agreement of Plaintiff, and all others similarly situated, that the

5  DEFENDANTS will provide services of the standard and quality consistent with the

6  Resident Bill of Rights as set forth in Title 22 California *Code of Regulations*

7  §72527(a)(25) to wit, California *Health & Safety Code* §1599.1.

8      50.    That is, simply by entering into an admission agreement with a resident,

9  the DEFENDANTS represent in writing as an exhibit or addendum attached to the

10  admission agreement of Plaintiffs, and all others similarly situated, that the

11  transaction conferred the statutory resident rights afforded to all residents of skilled

12  nursing facilities under *Health & Safety Code* §1599.1(a) and 22 *Code of Regulations*

13  §72527(a)(25), most specifically the right to live in a facility that employs "an

14  adequate number of qualified personnel to carry out all of the functions of the facility"

15  as to "Direct Caregivers" when in fact the transaction of entering into an admission

16  agreement with DEFENDANTS did not confer such right in direct violation of *Civil*

17  *Code* §1770(a)(14).

18      51.    The representations of DEFENDANTS as incorporated into their

19  admissions contracts are false and known by the DEFENDANTS to be false when

20  made. Plaintiff and the class relied on these misrepresentations into becoming and/or

21  remaining residents of the FACILITY. In reliance of these misrepresentations,

22  Plaintiff and the class made payments to the DEFENDANTS in return for these

23  services as promised. Plaintiff and the class suffered pecuniary harm in the form of

24  lost payments and lost services when the DEFENDANTS actually failed to provide

25  these promised skilled nursing services as represented.

26      52.    It is alleged that DEFENDANTS' representations set forth in their

27  uniform resident admission agreements that they would ensure their residents' right

28  to live in an adequately staffed facility were false because, instead of providing the

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

GARCIA & ARTIGLIERE

ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1  represented standard of care, at all times herein relevant the DEFENDANTS
2  intentionally concealed from Plaintiff and members of the class that the
3  MANAGEMENT DEFENDANTS conceived and implemented a plan to wrongfully
4  increase business profits at the expense of the rights and health of residents such as
5  Plaintiff, and others similarly situated through the chronic understaffing of "Direct
6  Caregivers" which prevented the FACILITY from ensuring their residents' statutory
7  right to live in an adequately-staffed facility as to "Direct Caregivers" that would meet
8  the needs of the residents, rendering the representations of the DEFENDANTS as to
9  the nature and quality of their services as false.

10      53.    It is alleged that federal and California regulations require skilled nursing
11  facilities to provide adequate, qualified staffing to meet resident needs and to carry
12  out all functions at the facility, regardless of whether adequate staffing would require
13  more staff than any required bare numeric ratios. Specifically, as it relates to federal
14  law, 42 *Code of Federal Regulations* § 483.30 states that a skilled nursing facility
15  "must have sufficient nursing staff to provide nursing and related services to attain or
16  maintain the highest practicable physical, mental, and psychosocial well-being of
17  each resident, as determined by resident assessments and individual plans of care." 42
18  *Code of Federal Regulations* §483.30 further states that a skilled nursing facility
19  "must provide services by sufficient numbers of each of the following types of
20  personnel on a 24-hour basis to provide nursing care to all residents in accordance
21  with resident care plans: (i) Except when waived under paragraph (c) of this section,
22  licensed nurses; and (ii) Other nursing personnel." 42 *Code of Federal Regulations* §
23  483.30(a)(1).

24      54.    It is specifically alleged that the regulations enacted pursuant to the
25  California *Health and Safety Code*[4] also require that a skilled nursing facility maintain

26  _____

27  [4] These regulations set the standard of care with which skilled nursing FACILITY must comply. See Cal. *Health & Saf.*
28  *Code* §1276(a) ("The building standards published in the State Building Standards Code by the Office of Statewide
Health Planning and Development, and the regulations adopted by the state department shall, as applicable, prescribe

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
M:\Community Care Rehab, In Re (23-049)\Pleadings\Complaint.docx

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

staffing at levels sufficient to meet the needs of residents, even if that required staffing level is more than the bare minimum numeric ratio of 3.2 NHPPD required by *Health & Safety Code* §1276.5 through July of 2017 and thereafter, pursuant to *Health & Safety Code* §1276.65- 3.5 NHPPD. "Nursing service personnel shall be employed and on duty in at least the number and with the qualifications determined by the Department to provide the necessary nursing services for patients admitted for care. The staffing requirements required by this section are minimum standards only. Skilled nursing facilities shall employ and schedule additional staff as needed to ensure quality resident care based on the needs of individual residents and to ensure compliance with all relevant state and federal staffing requirements." Title 22 *California Code of Regulations* § 72329.1(a).

55.    It is alleged that minimum staffing of personnel in the FACILITY is dependent by law upon the acuity (need) level of the residents of the FACILITY. As alleged more fully below, the FACILITY'S resident acuity levels during the class period were so high such that the "minimum" staffing ratios exceeded the numeric minimum of *Health & Safety Code* §1276.5 and *Health & Safety Code* §1276.65 pursuant to the provisions of Title 22 *California Code of Regulations* §§72515(b), 72329.1 and 42 C.F.R. §483.30.

56.    Thus, it is specifically alleged that DEFENDANTS, as operators of skilled nursing facilities must, pursuant to statutes and regulations with which DEFENDANTS are required to comply, know that sufficient nursing staff is required to meet the needs of residents and to ensure the health and safety of residents. Conversely, DEFENDANTS, as operators of skilled nursing facilities must also know that a failure to maintain sufficient staffing to meet the needs of residents will endanger the health and safety of residents of the FACILITY. The DEFENDANTS, as operators of skilled nursing facilities, cannot claim ignorance of these regulatory

standards of adequacy, safety, and sanitation of the physical plant, of staffing with duly qualified licensed personnel, and of services, based on the type of health facility and the needs of the persons served thereby.").

requirements without endangering their very licensure. Skilled nursing facilities have the "responsibility to see to it that the license is not used in violation of law." (*California Assn. of Health Facilities v. Department of Health Services* (1997) 16 Cal.4th 284, 295.); see also *California Code of Regulations*, §72501, subd. (a) (skilled nursing facilities "shall be responsible for compliance with the licensing requirements and for the organization, management, operation and control of the licensed facility.").

57.    It is alleged that at all times relevant hereto, in addition to mandating minimum staffing, the California Legislature also has specifically recognized and declared that failing to maintain sufficient staffing may result in death or serious physical harm to residents. As specifically alleged hereinabove, operators of skilled nursing facilities such as the DEFENDANTS are required to comply with (and hence have knowledge of) these statutes and regulations. California *Health and Safety Code* §1276.65, which requires the development of regulations setting forth staffing ratios as explained above, also provides that "[a] violation of the regulations developed pursuant to this section may constitute a class "B," "A," or "AA" violation pursuant to the standards set forth in Section 1424." (*Health & Saf. Code*, §1276.65, subd. (g)(2).) That is, simply understaffing a facility may constitute a class "B," "A," or "AA" citation. In turn, Section 1424, subdivisions (c), (d), and (e), defines the classifications of citations in relevant part as follows:

(c)    Class "AA" violations are violations that meet the criteria for a class "A" violation and that the state department determines to have been a *direct proximate cause of death of a patient or resident* of a long-term health care facility.

(d)    Class "A" violations are violations which the state department determines present either (1) *imminent danger that death or serious harm* to the patients or residents of the long-term health care facility would result therefrom, or (2) *substantial probability that death or serious physical harm to patients or residents* of the long-term health care facility would result therefrom.

(e) Except as provided in paragraph (4) of subdivision (a) of Section 1424.5, class "B" violations are violations that the state department determines have a *direct or immediate relationship to the health, safety, or security of long-term health care facility patients or residents*, other than class "AA" or "A" violations.

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

California *Health & Safety Code* §1424 (emphasis added).

58.     Thus, it is alleged that at all times relevant hereto, the DEFENDANTS were required to know pursuant to applicable statues and regulations (or risk forfeiture of licensure) that understaffing the FACILITY creates a high risk of harm to residents of that facility. That at all times relevant hereto the DEFENDANTS consciously disregarded that knowledge and continued to maintain insufficient staffing levels.

59.     The analysis of whether a skilled nursing facility provides adequate staffing entails three basic steps: a) determining the collective acuity level of the residents at the facility; b) determining the staffing levels at the facility; and c) comparing the collective acuity and staffing levels at the facility in light of recognized minimum staffing requirements. It is alleged that a facility's acuity level is based upon the average resident acuity in the population for whom care is being provided. It is alleged that it is not necessary to determine whether all residents individually receive a certain number of hours of nursing care per day, but rather whether the facility – as a whole – is adequately staffed to account for the facility's collective acuity level. It is alleged that although a facility's acuity level can vary from day to day, the acuity rates can be determined by taking the average facility acuity over the course of several months. This process provides a reliable index of a facility's average patient nursing needs, a key for determining adequate staffing requirements.

60.     And in fact the FACILITY has itself testified under penalty of perjury confirming this reality and as follows:

> Q. And now, your facility doesn't go resident-by-resident and create a form saying resident one needs .1 nursing hours per patient day, resident 2 needs 2, and so on and add them up; that's not what you do in your facility, is it?
> A. No, it's not.
> Q. Rather what you do is you use your education, your training, your experience, documents that are available to you to reflect acuity, and then you look at the facility census as a whole and then determine how much staff is necessary to meet those needs; correct?
> A. That is part of it, yes.
> Q. And point of fact, you are competent to perform that assessment of the acuity in your building and determining the sufficiency of staff as

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
M:\Community Care Rehab, In Re (23-049)\Pleadings\Complaint.docx

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

the director of nursing; yes?
A. Yes, I am.
Q. Do you know what a STRIVE study is?
A. I'm sorry, can you repeat the question.
Q. Of course I can.Do you know what a STRIVE study is?
A. STRIVE study, no, sir, I don't.
Q. You don't use a STRIVE study to determine the sufficiency of staff -- and I'm not being disparaging to you, it's just not something you utilize; correct?
A. Yes.
Q. Same for the Ames study (phonetic); correct?
A. Correct.

61.    The staffing analysis described above is done at a facility-level. Thus, it does not require any individualized inquiry into how many hours of direct nursing care any specific resident received on any given day. Rather, the proper analysis is whether the *facility as a whole* employed an adequate number of qualified staff to competently care for the collective needs of its residents. It is specifically alleged that the United States Centers for Medicare & Medicaid Services ("CMS") has already developed a methodology for determining the level of staffing required to meet the needs of residents based on the collective acuity levels of the residents via the CMS Agency Patient-Related Characteristics Report (formerly the Case Mix Report), which is the average resident need score based on resident assessment data that CMS has already collected and calculated. A self-authenticating link to a portion of this staffing information is at: **http://www.cms.gov/Medicare/Provider-Enrollment-and-Certification/CertificationandComplianc/Downloads/staffingdatafile.zip.**

62.    It is specifically alleged that if a skilled nursing facility's staffing levels are lower than the level of staffing of "Direct Caregivers" required to meet the needs of residents as determined by their collective acuity, that facility has violated its residents' statutory, affirmative and actionable right to reside in a skilled nursing facility that employs "an adequate number of qualified personnel to carry out all of the functions of the facility." California *Health & Safety Code* §1599.1(a). Upon information and belief, it is alleged that the FACILITY were inadequately staffed in violation of *Health & Safety Code* §1599.1(a).

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
M:\Community Care Rehab, In Re (23-049)\Pleadings\Complaint.docx

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

63.    However, contrary to DEFENDANTS' representations contained within the standard admission agreement, DEFENDANTS did not devote sufficient financial resources to the proper operation of the FACILITY, did not devote sufficient financial resources to protect the health and safety of residents and ensure resident rights were not violated, and instead diverted those resources to create ill-begotten profits for DEFENDANTS. Instead, DEFENDANTS chronically understaffed the FACILITY with an inadequate number of "Direct Caregivers" to carry out the function of the FACILITY as more fully alleged herein, and in so doing and as a result thereof, the DEFENDANTS have violated the rights afforded to all residents of skilled nursing facilities under *Health & Safety Code* §1599.1(a) and 22 *Code of Regulations* §72527(a)(25).

64.    In reality, in direct contradiction to the representation in their uniform admission agreement that the FACILITY would "employ an adequate number of qualified personnel to carry out all functions of the facility" and to meet the needs of their residents, DEFENDANTS chronically understaffed the FACILITY as to "Direct Caregivers" and chronically failed to meet the particularized standards as set forth in the Resident Bill of Rights relating to the mandatory requirements of California *Health & Safety Code* §1599.1(a) as set forth in Title 22 *Code of Regulations* §72527(a)(25), in the requirements of Title 22 C*Code of Regulations* §72329.1 during the residency of Plaintiff in the FACILITY, as well as during the residencies of members of the class.

65.    In fact, the reported hours and staffing ratios by the DEFENDANTS are a complete and intended fraud in two ways. First, this intended fraud to be perpetrated upon the public and the government by these DEFENDANTS is vibrantly illustrated by the staffing records of the FACILITY used by the FACILITY to report hours to the DPH, in which DEFENDANTS include non-direct caregivers in violation of 22 *Code of Regulations* §§ 72329.1(g) and §72038 in their computation of staffing ratios reported to the public and the government. That is, DEFENDANTS artificially and

fraudulently inflate the reported nursing staff ratios by unlawfully and fraudulently including the hours of employees not providing direct nursing care, including but not limited to administrative, supervisory, and/or maintenance employees who do not provide direct patient care.

66.    In reality, the true and actual hours and staffing ratios without the impermissible inclusion of employees not providing direct nursing care reveals that the FACILITY was woefully understaffed during the residency of PLAINTIFF in the FACILITY and throughout the class period given the acuity of the residents. For example, the true nursing hours per patient day for days during the residency of PLAINTIFF were well below the bare minimum numeric ratio and were as follows:

| DATE | NURSING HOURS PER PATIENT DAY |
|---|---|
| 04/10/2022 | 3.25 |
| 04/17/22 | 3.06 |
| 05/07/22 | 3.14 |
| 05/08/22 | 2.98 |
| 05/14/22 | 3.25 |
| 05/21/22 | 3.04 |
| 05/22/22 | 2.96 |
| 05/28/22 | 3.25 |
| 05/29/22 | 3.35 |
| 06/11/22 | 3.24 |
| 06/12/22 | 3.02 |

67.    Second, the fraud perpetrated on the public and the government can be seen from DEFENDANTS' own time-keeping records which do not take into account

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
M:\Community Care Rehab, In Re (23-049)\Pleadings\Complaint.docx

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

rest breaks required by *Labor Code* §226.7 and 8 *California Code of Regulations* §§ 11010-11150, ¶ 12 and §11160, ¶ 11. Thus, for example, for a nurse working an eight-hour shift, the DEFENDANTS report the full eight hours to DPH even though in reality that nurse was only on the floor providing direct patient care for seven hours and forty minutes (7.66 hours) due to taking the two 10-minute breaks required by the *Labor Code*. While the fraudulent reporting of eight hours as opposed to 7.66 hours may seem inconsequential with only one nurse involved, when it is extrapolated on a facility wide-basis, its effects are dramatic.

68.   For example, if on a given day the FACILITY had 40 nurses working eight-hour shifts with a total patient census of 100 for that day, the FACILITY as a systemic policy and practice reports a total of 320 hours worked for that day, divided by 100 residents for a total of 3.2 nursing hours per patient day ("NHPPD"), which is the bare minimum numeric staffing ratio required by Health & Safety Code §1276.5. However, in reality and contrary to the fraudulent reporting of DEFENDANTS to DPH, each of the 40 nurses worked only 7.66 hours due to taking two required 10-minute breaks for a total of 306.4 hours actually worked. 306.4 hours divided by 100 residents results in a total of 3.064 NHPPD, well *below* the minimum numeric ratio of 3.2 hours required by Health & Safety Code §1276.5. These reality of this understaffing and fraud perpetrated by the DEFENDANTS upon CMS will be proven by review of a few simple and available documents and as follows:

- The Facility CDPH "612 Form";
- The "Facility Assessment" prepared pursuant to 42 Code of Federal Regulations § 483.70(e);
- The Facility form as to actual hours;
- Staff Assignment Sheets;
- CMS 671 and 672 forms;
- Payroll Based Journal;
- The Facility RUGS (Resident Utilization Group) and HIPPS scores;

- Facility Staffing Ladders;

- Medicare and Medicaid Cost Reports; and

- The time cards of each individual the DEFENDANTS claim were providing "direct nursing services" (as that term is defined in *Health & Safety Code* §1276.5) during the relevant time period.[5]

Each of these documents can be produced by a computer key stroke for analysis.

69.    It is alleged that at all relevant times hereto, the DEFENDANTS as a systemic policy and practice always reported to DPH total nursing hours and NHPPD ratios which did not take into account the rest breaks required by Labor Code §226.7 and 8 California Code of Regulations §§ 11010–11150, ¶ 12 and §11160, ¶ 11. It is further alleged that at all times relevant hereto DEFENDANTS failed to take into account required rest breaks in determining the amount of staff the FACILITY required to ensure the rights afforded to PLAINTIFF, members of the class, and all residents of skilled nursing facilities under *Health & Safety Code* §1599.1(a) and 22 *Code of Regulations* §72527(a)(25), most specifically, the right to live in a facility that employs "an adequate number of qualified personnel to carry out all of the functions of the facility" pursuant to Health & Safety Code §1599.1(a) (as expressly incorporated by Title 22 *Code of Regulations* §72527(a)(25). That in failing to take into account the required rest breaks, DEFENDANTS failed to adequately staff the FACILITY to meet the needs of the residents, thereby violating PLAINTIFF'S and

---

[5] The concern of course is that the defendant will now destroy the records to hide the truth of their deception and fraud from being exposed. Such an effort in spoliation would, at a minimum, clearly violate the provisions of 22 *Code of Regulations* §72329.1(h) which mandates as follows:

h) The facility shall retain the staff assignment record that it employs to comply with subsection (i) for each shift, the licensing and/or certification status of the staff, and the patient census for each shift. Records documenting staffing, including staff assignment records and payroll records, shall be retained for a minimum of three years. Unless the request is made by Department staff who are present at the facility, in which case it must be provided immediately, documentation of staffing shall be provided to the Department within ten days of the Department's request for the documentation. If the facility is unable to provide the documentation requested by the Department, it shall cease admitting new patients until it demonstrates to the Department that it has the staff necessary to provide the care needed by the patients by submitting the requested documentation. The facility shall also comply with the provisions of Section 1429.1 of the Health and Safety Code.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
M:\Community Care Rehab, In Re (23-049)\Pleadings\Complaint.docx

each class member's rights set forth in *Health & Safety Code* §1599.1(a) and 22 Code of Regulations §72527(a)(25).

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT**
**[By TRACYNE RESTREPO on her behalf and on behalf of others similarly situated Against All DEFENDANTS]**

70.     TRACYNE RESTREPO hereby incorporates the allegations asserted hereinabove as though set forth at length below.

71.     The DEFENDANTS make representations to prospective residents and their families, and others similarly situated via their uniform admission agreements as set forth more fully hereinabove. Pursuant to this uniform representation that the services provided by the Defendants would meet the particularized standards as set forth in the Resident Bill of Rights attached to the uniform Admission Agreement, the DEFENDANTS were to provide all residents of the FACILITY services consistent with the mandatory requirements of California *Health & Safety Code* §1599.1(a) as set forth in Title 22 *Code of Regulations* §72527(a)(25). Specifically, the services represented by the DEFENDANTS that they would provide to each resident, via the contractual Admission Agreement arrangement with each resident, was explicitly stated by the DEFENDANTS to include the obligation, and representation as to the standard of care to be provided, that the FACILITY would ensure the rights afforded to all residents of skilled nursing facilities under *Health & Safety Code* §1599.1(a) and 22 *Code of Regulations* §72527(a)(25), most specifically the right to live in a facility that employs "an adequate number of qualified personnel to carry out all of the functions of the facility" as to "Direct Caregivers." These uniform representations of the DEFENDANTS in the Admission Agreement as to the nature of their services in this regard as to "Direct Caregivers" were false and actually known to be false when made by the DEFENDANTS.

72.     These representations by DEFENDANTS were intended to induce and lure elderly and infirm residents (and their representatives) into agreeing to be

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

admitted to the FACILITY based on false and misleading representations without disclosing that DEFENDANTS cannot and do not provide the represented level and quality of care to residents. Before, during, and after the admissions processes of Plaintiffs and each class member, the DEFENDANTS actively and intentionally concealed from Plaintiffs and class members, and/or each's legal representative, that DEFENDANTS have a long history of being serial violators of skilled nursing industry laws.

73.    It is alleged that the concealments by DEFENDANTS alleged in the immediately preceding paragraph were intended to deceive Plaintiffs and members of the class, and/or each's legal representative, into believing that the FACILITY was properly operated to induce Plaintiffs and class members into becoming and/or remaining residents of the FACILITY. Plaintiffs and members of the class, all in infirm health, elderly, and/or in need of skilled nursing care and members of one of the most vulnerable segments of our society, and/or each's legal representative, were unsophisticated and unknowledgeable in the operation of skilled nursing facilities in the State of California and had no knowledge of the facts concealed by DEFENDANTS and could not have discovered those concealed facts due to, among other things, their extremely vulnerable status. Had the concealed facts been disclosed to Plaintiffs and members of the class, they would not have become and/or remained residents of the FACILITY and would not have paid, or had monies paid on their behalf, for the substandard skilled nursing care at the FACILITY.

74.    The representations DEFENDANTS made in their uniform admission agreement as to "Direct Caregivers" were false and known to be false when made as set forth more fully hereinabove.

75.    Plaintiffs and the class relied on these misrepresentations into becoming and/or remaining residents of the FACILITY. In reliance of these misrepresentations, the Plaintiffs and the class made payments to the DEFENDANTS in return for these services as promised. Plaintiffs and the class suffered pecuniary harm in the form of

GARCIA & ARTIGLIERE

ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
M:\Community Care Rehab, In Re (23-049)\Pleadings\Complaint.docx

lost payments and lost services when the DEFENDANTS actually failed to provide these promised skilled nursing services as represented.

76. As a result, Defendants have violated and continue to violate the Consumer Legal Remedies Act, *Civil Code* §1770 et seq. ("CLRA") in at least the following respects:

a. In violation of section 1770(a)(5), the defendants' acts and practices constitute misrepresentations that the skilled nursing care that they purport to provide had characteristics, standards, performance and level of quality which it did not have; and

b. In violation of section 1770(a)(7), the defendants have misrepresented that the skilled nursing care that they purport to provide is of a particular standard, quality and/or grade, when it is not.

c. In violation of section 1770(a)(9), the defendants have misrepresented the nature of their skilled nursing services with the intent not to sell them as represented.

d. In violation of section 1770(a)(14), the defendants have misrepresented that the transaction of entering into admission agreement with Defendants conferred or involved rights, remedies, or obligations which the transaction did not have or involve, or which was prohibited by law.

77. On July 19, 2023, pursuant to Section 1782, Plaintiff notified each defendant named in this cause of action in writing of the asserted violations of Section 1770 and demanded that DEFENDANTS rectify the conduct described above. Upon information and belief DEFENDANTS did not take corrective action within the time prescribed by law.

78. It is alleged that Plaintiffs and members of the Class suffered injury in fact and concrete harm in that they relied on the representations of the DEFENDANTS that they would be provided with minimum standards of care consistent with the requirements of *Health & Safety Code* §1599.1(a) as incorporated into Title 22 *Code of Regulations* §72527(a)(25), yet did not receive this promised standard of care and suffered pecuniary harm by being deprived of the value of payments made for skilled nursing services when these services were not actually rendered consistent with the DEFENDANTS' representations.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

79.    In addition, these class members made monetary payments to the DEFENDANTS in return for skilled nursing services of the standard promised by the DEFENDANTS in the uniform Admission Agreement and its attachments which are incorporated into the Admission Agreement as alleged above. The class has suffered pecuniary harm in that the DEFENDANTS did not provide such services of the standard represented. In addition, Each Plaintiff and class members have suffered pecuniary harm in that DEFENDANTS misrepresented that entering into an admission agreement with DEFENDANTS conferred the statutory resident right under *Health & Safety Code* §1599.1 of Plaintiffs and class members to reside in a facility that employs "an adequate number of qualified personnel to carry out all of the functions of the facility" when in fact the transaction of entering into an admission agreement with DEFENDANTS did not confer such right.

80.    Each Plaintiff and members of the class are "senior citizens" as defined by Section 1761(f) and meet the requirements of Section 1780(b) to each be entitled to an award of $5,000 in addition to the other remedies available under the CLRA.

81.    As the direct and proximate result of these violations of law TRACYNE RESTREPO, and others similarly situated, suffered economic loss in the form of unearned payments to the DEFENDANTS in an amount to be proven at time of trial.

82.    The defendants' conduct as alleged in this cause of action was, and is, malicious, oppressive and/or fraudulent.

### SECOND CAUSE OF ACTION
### VIOLATION OF RESIDENT RIGHTS (Health & Saf. Code §1430(b))
**[By TRACYNE RESTREPO on her behalf and on behalf of others similarly situated Against All DEFENDANTS]**

83.    TRACYNE RESTREPO hereby incorporates the allegations asserted hereinabove as though set forth below.

84.    *Health & Safety Code* §1430(b) creates a private right of action for any resident or patient of a skilled nursing facility against the licensee of the facility that violates any rights of the resident or patient as set forth in the Patients' Bill of Rights.

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
M:\Community Care Rehab, In Re (23-049)\Pleadings\Complaint.docx

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

85.    *Health & Safety Code* §1430(b) also provides that "a current or former resident or patient of a skilled nursing facility as defined in subdivision (c) of section 1250 may bring a civil action against the licensee of a facility who violates any applicable regulatory  rights of the resident or patient here to include the right to sufficient staff to meet the residents needs as required by .22 *Code of Regulations* §§72329 and 72329.1.

86.    As more specifically set forth hereinabove, the liability of all of the DEFENDANTS under *Health & Safety Code* §1430(b) arises from the DEFENDANTS joint enterprise in that there was a such a unity of interest and ownership between the DEFENDANTS such that the individual distinctions between them had ceased and that the facts as alleged herein are such that an adherence to the fiction of the separate existence of the DEFENDANTS would, under the particular circumstances alleged herein, sanction a fraud and/or promote injustice. The MANAGEMENT DEFENDANTS controlled the FACILITY to such a degree that it was a "mere instrumentality" of the MANAGEMENT DEFENDANTS used for an improper purpose.

87.    At all relevant times, the DEFENDANTS, and each of their tortious acts and omissions, as alleged herein, were done in concert with one another in furtherance of their common design and agreement to accomplish a particular result, namely maximizing profits from the operation of the FACILITY by underfunding and understaffing the FACILITY despite the mandates of law in violation of each Plaintiff's and the class' resident's rights.

88.    Upon information and belief, it is alleged that the misconduct of the DEFENDANTS, which led to the violation of the rights of each Plaintiff and the class as alleged herein, was the direct result and product of the financial and control policies and practices forced upon the FACILITY by the financial limitations imposed upon the FACILITY by the DEFENDANTS, by and through the officers, directors and/or managing agents enumerated in hereinabove and others presently unknown to each

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1  Plaintiff and according to proof at time of trial.

2      89.    The DEFENDANTS systematically and systemically violated 22 *Code
3  of Regulations* §§72329 and 72329.1 by failing to have "Direct Caregivers" Nursing
4  service personnel employed and on duty in at least the number to provide the
5  necessary nursing services for patients admitted for care. In doing so the
6  DEFENDANTS have run afoul of the provisions of *Health & Safety Code* §1430(b).

7      90.    As a result of the systematic and systemic violations of 22 *Code of
8  Regulations* §§72329 and 72329.1 by failing to have Nursing service personnel
9  employed and on duty in at least the number to provide the necessary nursing services
10  for patients admitted for care, each Plaintiff, as well as others similarly situated, failed
11  to receive the care to which she was required to receive pursuant to California law
12  and would not have entered the facilities but for the above alleged reasonable reliance
13  upon the representations of the Admission Agreements as to the Patient's Bill of
14  Rights and suffered personal and real harm as the result of this misrepresentation and
15  subsequent violations.

16      91.    Among other remedies, *Health & Safety Code* §1430(b) authorizes the
17  recovery of statutory damages up to $500.00 per cause of action, attorneys' fees and
18  costs. *Health & Safety Code* §1430(b). These remedies are cumulative to any other
19  remedies provided by law. *Health & Safety Code* §1430(c). Given that the violation
20  involves elderly residents, the statutory damage award is subject to trebling under
21  *Civil Code* §3345.

22      **WHEREFORE**, plaintiffs prays for judgment as follows:

23      1.    For a Court order certifying that the action may be maintained as a class
24  and/or representative action;

25      2.    For an Order permanently enjoining defendants, and each of them, from
26  violating residents' rights pursuant to *Health & Safety Code* §1430(b). For an
27  injunction, requiring that:

28      a. That the FACILITY maintain actual nursing hours (as that term is

defined in *Health & Safety Code* §1276.5(b)) of 3.94 nursing hours per patient day;

b.  the Defendants report to DPH all incidents of actual or suspected abuse or neglect (as defined by law) of which it has learned in the last three (3) years at the FACILITY, which were not reported to DPH, Adult Protective Services and/or Law Enforcement;

c.  the Defendants provide proof to the Court of compliance with the reporting requirements over the last three (3) years for any and all such incidents in the form of a copy of the report submitted to DPH;

d.  the FACILITY conduct quarterly, confidential surveys of *all* residents and residents' representatives inquiring whether any conduct which may be deemed suspected abuse and/or neglect, and/or a violation of residents' rights has occurred (with a clear, court approved definition of these terms included, with examples), and requiring that the responses to these surveys be turned over to the Long Term Care Ombudsman assigned to the pertinent facility for review. Further, after providing confidential surveys in unredacted form to the Ombudsman, the FACILITY shall than redact only the name of the individual residents who completed the survey (or on whose behalf the survey was completed) from the surveys, and maintain copies of those surveys for a period of five (5) years, and that the surveys be made available (with names redacted) to any prospective resident, or their representative, any current resident, or their representative, or any past resident, or their representative, within 24 hours of a request;

e.  the FACILITY notify all current residents of this injunction by providing a copy of the injunction to them and their power of attorney/responsible party and/or personal representative, if any;

f.  the FACILITY notify all future residents (at the time the admission agreement is signed) by providing a copy of this injunction during the period for which this injunction is in force to any new resident and to his or her power of attorney/responsible party and/or personal representative, if any;

g.  That this injunction shall remain in full force and effect until the earlier of either of the following; (1) ten years from the date of entry of judgment, or (2) five years if no other violations of the injunction have been found by this or any other Court of competent jurisdiction regarding the FACILITY. The burden of proof to obtain the shorter period shall be on the Defendants;

h.  This injunction shall be enforced by the Court upon motion of any interested party (i.e., plaintiffs or any other current or former resident (and/or their power of attorney/responsible party and/or personal representative, if any, or any employee of the FACILITY) and/or the filing of a new action of any such interested party. Each separately identifiable violation of this injunction shall be punishable by a $5,000 fine payable to the person filing the motion or bringing the action and a payment of all reasonable attorney's fees and costs incurred by the person bringing the motion or action against the Facility for violation of the injunction.  A separate, identifiable violation includes for

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
M:\Community Care Rehab, In Re (23-049)\Pleadings\Complaint.docx

example, each giving of a dose of medication that is not prescribed is a separate violation that each resident may demand, separately;

i.   the FACILITY shall draft a policy and procedure to the satisfaction of the Court covering the handling of suspected abuse and neglect reporting as well as the obligation to asses and document patients' needs *immediately* upon arrival and when an emergency occurs; and on staffing; and

j.   the FACILITY shall prepare a training program to the satisfaction of the Court to train its staff on the new policies and procedures; and shall submit verification, under oath, of compliance with that training program by all employees of each of the FACILITY within 12 months, and then repeated annually during the term of this judgment;

3.   For attorneys' fees and costs as allowed by law according to proof at the time of trial, including, but not limited to attorneys' fees pursuant to *Code of Civil Procedure* §1021.5 and *Health & Safety Code* §1430(b);

4.   For statutory damages and penalties pursuant to *Health & Safety Code* §1430(b);

5.   For actual damages in a total amount to exceed one thousand dollars pursuant to *Civil Code* §1780(a)(1);

6.   For civil penalties for "senior citizens" and "disabled persons" in the amount of $5,000 for each injured "senior citizen" and "disabled person" pursuant to *Civil Code* §1780(b);

7.   For punitive damages as to the First Cause of Action alone;

8.   For disgorgement of monies illegally gotten as to the First Cause of Action alone;

9.   For treble damages pursuant to *Civil Code* Section 3345; and

10.   For such other and further relief as the Court may deem just and proper.

/ / /

/ / /

/ / /

/ / /

/ / /

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

M:\Community Care Rehab, In Re (23-049)\Pleadings\Complaint.docx

DATED:  August 21, 2023          **GARCIA & ARTIGLIERE**


By: _____
        Stephen M. Garcia
        Attorneys for Plaintiffs

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
M:\Community Care Rehab, In Re (23-049)\Pleadings\Complaint.docx